UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JENNIFER PAUL                                          CIVIL ACTION

VERSUS

ELAYN HUNT CORRECTIONAL                    NO.:14-00558-BAJ-RLB
CENTER, ET AL.

RULING AND ORDER

Before the Court is a **Motion for Summary Judgment (Doc. 15)**, filed by

Defendants Elayn Hunt Correctional Center ("Hunt"), the Department of Public

Safety and Corrections, and the State of Louisiana (collectively, "Defendants").

Defendants seek summary judgment on Plaintiff Jennifer Paul's ("Plaintiff")

retaliation claim and sexual harassment claim pursuant to Title VII of the Civil

Rights Act ("Title VII"), 42 U.S.C. § 2000e *et seq*., and the Louisiana Employment

Discrimination Law ("LEDL"), La. RS § 23:301 *et seq*. Plaintiff filed an opposition,

(Doc. 18), and Defendants filed a reply, (Doc. 19). Oral argument is not necessary.

Jurisdiction is proper under 28 U.S.C. § 1331. For the reasons assigned, the motion

is **GRANTED**.

I.    **BACKGROUND**

This action arises out of Plaintiff's termination in 2014 from her position as a

Sergeant Correctional Officer at Hunt. (Doc. 1).  After filing a lawsuit against Hunt

in 2009, for sexual harassment by a female officer, Plaintiff was reinstated to her

position in 2011. (*Id*. at ¶ 6). Between her reinstatement in 2011 and her termination

in 2014, Plaintiff alleges that she was subject to retaliation and sexual harassment.

(*Id*. at ¶¶ 7-32). Plaintiff alleges the following incidents in support of her claims.

In 2012, Deputy Warden Hooper assigned Plaintiff to Unit One, Team C, which was under the shift supervision of Major Lessard, an "openly gay" female officer. (Doc. 15-4, Paul Dep. 89:1-5; Doc. 18-3, Hooper Dep. 24:18-24). Plaintiff alleges that Deputy Warden Hooper assigned her to Major Lessard's team in retaliation for her filing a sexual harassment claim against another "openly gay" female officer. (Doc. 15-4, Paul Dep. 87:5-88:22).

In May 2012, Assistant Warden Guerin withdrew the approval of Plaintiff's vacation leave after she exhausted her allotted leave for the year. (*Id*. at 82:19-25, 84:7-9). After Plaintiff exhausted her allotted leave, all leave requests were required to go through Assistant Warden Guerin's office. (Doc. 15-7, Guerin Summ. J. Aff.; Doc. 18-8, Guerin Dep. 88:23-89:12). Assistant Warden Guerin had the discretion to approve Plaintiff's vacation leave. (Doc. 15-4, Paul Dep. 84:25-85:9; Doc. 15-7, Guerin Summ. J. Aff.). Plaintiff alleges that he retaliated against her by not exercising his discretion in her favor. (Doc. 15-4, Paul Dep. 84:25-85:9).

On July 10, 2012, and July 28, 2012, Plaintiff was working an evening shift with an officer who fell asleep in the offender-dorm (Doc. 18-6 at pp. 9-12). Plaintiff reported the incidents to Captain Sonier, Lieutenant Hartley, Lieutenant Butler, and Major Lessard. (*Id*.). Plaintiff alleges that Major Lessard retaliated against her by assigning her to work in the dorm with the officer.  (Doc. 1 at ¶ 11).

On July 19, 2012, and August 2, 2012, Major Lessard "docked" Plaintiff's pay for failing to work a scheduled shift. (Doc. 15-4, Paul Dep. 99:4-25; Doc. 15-10, Lessard Summ. J. Aff.). The deducted wages were eventually returned to Plaintiff because her

absences were pursuant to FMLA leave, but she alleges that Major Lessard "docked" her pay in retaliation. (Doc. 15-4, Paul Dep. 99:4-25, 101:3-102:2).

On February 22, 2013, Sergeant Hernandez, an "openly gay" female officer, allegedly "groped" Plaintiff's right breast while pretending to "fist bump" her. (Doc. 1 at ¶ 12). Plaintiff complained about the incident to Assistant Warden Michel, who conducted an investigation and concluded that the allegations were unsubstantiated. (Doc. 15-9, Michel Summ. J. Aff.). Nonetheless, Sergeant Hernandez was removed from Plaintiff's shift on April 8, 2013, and Plaintiff never saw her again. (*Id.*; Doc. 15-4, Paul Dep. 65:17-22).

In April 2013, Plaintiff was reassigned from Tower 6 to Tower 8, to fill the position vacated by Sergeant Hernandez's reassignment. (Doc. 15-10, Lessard Summ. J. Aff.). Plaintiff alleges that she was not trained for her assignment to Tower 8, (Doc. 15-4, Paul Dep. 71:14-72:3), which housed a computer monitor and a sally port that required the stationed officer to operate an interior and exterior gate, (Doc. 15-10, Lessard Summ. J. Aff.). Plaintiff alleges that Major Lessard retaliated against her by reassigning her and failing to properly train her. (Doc. 15-4, Paul Dep. 71:14-72:3).

On June 20, 2013, Plaintiff alleges that Warden Prince "made sexual comments" to her. (Doc. 1 at ¶¶ 15-17). On July 1, 2013, Plaintiff alleges that he asked her, "Don't you think it's about time you and I got together?" (*Id.*). And on July 15, 2013, Plaintiff alleges that he once again inquired about them "getting together." (*Id.*). Plaintiff, however, did not report these incidents. (Doc. 18 at p. 8).

In August 2013, Major Lessard announced to her team that they were required to wear new uniforms or face disciplinary action. (Doc. 15-4, Paul Dep. 73:10-74:6).

3

The next day, Plaintiff was embarrassed because she was the only officer to wear the new uniform hat. (*Id.*). Plaintiff did not receive disciplinary action but she believes the incident happened in retaliation for her filing the prior lawsuits. (*Id.*).

Lastly, Plaintiff alleges that she was terminated from Hunt in retaliation for filing the prior lawsuit. On December 15, 2013, Plaintiff was operating the Tower 8 gate when it malfunctioned and hit a Hunt vehicle driven by Lieutenant Bailey. (Doc. 1 at ¶ 22). Lieutenant Bailey notified Major Lessard, who subsequently called Plaintiff and ordered her to take a drug test. (*Id.* at ¶¶ 24-25; Doc. 15-4, Paul Dep. 80:1-12). In response, Plaintiff asked Major Lessard for the next chain of command. (Doc. 15-4, Paul Dep. 80:1-12). Major Lessard contacted Assistant Warden McKey about the issue and he directed Major Lessard to send Plaintiff home. (*Id.*). A Violation Report ("VR-1")[1] was issued for Plaintiff's failure to follow Major Lessard's order, and Plaintiff was terminated on February 18, 2014. (*Id.* at 74:17-75:5).

Following her termination, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about August 8, 2014, and received a right to sue letter on or about August 12, 2014. (Doc. 18-7 at pp. 1, 7). Plaintiff filed the above captioned action on September 5, 2014, alleging retaliation and sexual harassment pursuant to Title VII and the LEDL. Defendants now seek summary judgment on Plaintiff's claims.

---

[1] *See* Doc. 15-12 at pp. 47-51. After an employee violates a rule, a supervisor is required to complete a VR-1, which triggers a two-step hearing process that results in a disciplinary determination. If an employee is unsatisfied with the results of the hearings, the employee may appeal to the Secretary of the Department of Public Safety and Corrections.

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party asserting that a fact cannot be genuinely disputed must support the assertion by citing materials in the record, including "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, [and] interrogatory answers" or that an adverse party cannot produce admissible evidence to support the presence of a genuine dispute. *See* Fed. R. Civ. P. 56(c)(1).

"[W]hen a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation marks and footnote omitted). "This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quotation marks and citations omitted). In determining whether the movant is entitled to summary judgment, the Court "view[s] facts in the light most favorable to the non-movant and draw[s] all reasonable inferences in her favor." *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

In sum, summary judgment is appropriate if, "after adequate time for discovery and upon motion, [the non-movant] fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

5

party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III.   DISCUSSION

### A.   Title VII: Sexual Harassment

Defendants contend that summary judgment should be granted on Plaintiff's Title VII sexual harassment claim because she did not allege sexual harassment in her EEOC Charge of Discrimination. "Under Title VII . . . a plaintiff must exhaust administrative remedies before pursuing employment discrimination claims in federal court." *Garcia v. Penske Logistics, L.L.C.*, No. 15-40061, 2015 WL 6688141, at *2 (5th Cir. Nov. 2, 2015) (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002)). "Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue." *Taylor*, 296 F.3d at 379. When a plaintiff files a charge with the EEOC, the "scope" of the charge is to be construed liberally. *Clark v. Kraft Foods, Inc.*, 18 F.3d 1278, 1280 n.7 (5th Cir. 1994) (citing *Fellows v. Universal Restaurants, Inc.*, 701 F.2d 447, 451 (5th Cir. 1983)). Nonetheless, the ultimate "scope" of the charge is limited to the "scope" of the EEOC investigation, which can "reasonably be expected to grow out of the charge of discrimination." *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006) (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)).

The underlying EEOC Charge of Discrimination only references a claim for retaliation. (Doc. 18-7 at p. 7). On the charge of discrimination form, Plaintiff checked the "retaliation" box and only described the Tower 8 gate incident that occurred on December 15, 2013, that resulted in her termination on February 18, 2014. (*Id.*). Even

6

when Plaintiff's EEOC Charge of Discrimination is liberally construed, the Court cannot surmise that an EEOC investigation into sexual harassment would have reasonably grown out of it. Plaintiff's sexual harassment and retaliation claims are unrelated and she has failed to allege a connection between the incidents.

Moreover, Plaintiff contends that she filed an EEOC complaint following the alleged sexual harassment by Sergeant Hernandez on February 22, 2013. (*See* Doc. 18 at pp. 6-7; Doc. 1 at ¶ 12). In support, she submitted a copy of a Notice of Suit Rights dated October 25, 2012. (Doc. 18-9). The Notice of Suit Rights, however, predates the sexual harassment incident by over three months. Therefore, the Court finds that summary judgment is appropriate on Plaintiff's sexual harassment claim.

### B.    Title VII: Retaliation

Under Title VII, it is "an unlawful employment practice for an employer to discriminate against any of its employees . . . because [the employee] has opposed any practice made an unlawful employment practice" by the statute or "because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e–3(a). To establish a prima facie case of retaliation, a plaintiff must first demonstrate that: (1) she engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action. *Thomas v. Atmos Energy Corp.*, 223 F. App'x 369, 376 (5th Cir. 2007) (citing *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 414 (5th Cir. 2003)). "If the employee establishes a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision." *Feist v. Louisiana, Dep't of Justice,*

7

*Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (internal quotation marks and citations omitted). "After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation, which the employee accomplishes by showing that the adverse action would not have occurred 'but for' the employer's retaliatory motive." *Id.* (internal quotation marks and citations omitted).

### 1.    Protected Activity

The parties do not dispute that Plaintiff satisfies the first prong of her prima facie case because her prior Title VII lawsuit qualifies as a protected activity. However, the parties disagree as to whether a material issue of fact exists as to Plaintiff's ability to establish an adverse employment action and a causal link.

### 2.    Adverse Employment Action

It is clearly established that termination is an adverse employment action, satisfying the second prong of Plaintiff's prima facie case. *DeHart v. Baker Hughes Oilfield Operations, Inc.*, 214 F. App'x 437, 442 (5th Cir. 2007) (citing *Walker v. Thompson*, 214 F.3d 615, 629 (5th Cir. 2000)). Nonetheless, Plaintiff also contends that following are adverse employment actions: (1) her placement under the supervision of Major Lessard, an "openly gay" female officer; (2) the denial of her vacation leave; (3) the "docking" of her pay; (4) her assignment to an offender-dorm with an officer who was known to sleep on the job; (5) her reassignment to a new tower without proper training; (6) being the only officer to wear a new uniform hat.

8

Considering each incident in the context of Plaintiff's case, the Court finds that these incidents to not amount to adverse employment actions. First, the sexual orientation of Plaintiff's supervisor, without more, does not rise to a materially adverse action.[2] Second, Plaintiff's reassignment to Tower 8 from Tower 6, to fill a vacancy, was not an adverse employment action.[3] *Vicknair v. Louisiana Dep't of Pub. Safety & Corr.*, 555 F. App'x 325, 331 (5th Cir. 2014) (finding that a state employee's lateral reassignment to fill a vacancy was not an adverse employment action). Additionally, Plaintiff has not demonstrated that the supervision of Major Lessard or the reassignment to Tower 8 affected her "job title, grade, hours, salary, or benefits," or that she "suffered a diminution in prestige or change in standing among her co-workers." *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009).

Furthermore, the denial of Plaintiff's vacation leave and the deduction of her pay for taking unauthorized leave do not rise to the level of adverse employment actions. It is undisputed that Warden Guerin had the discretion to withdraw Plaintiff's vacation leave because she exhausted her leave for the year. (Doc. 15-4, Paul Dep. 84:25-85:9; Doc. 15-7, Guerin Summ. J. Aff.); *see also Beltran v. Univ. of Texas Health Sci. Ctr. at Houston*, 837 F. Supp. 2d 635, 643 (S.D. Tex. 2011) ("[T]he denial of short term vacation time is not an adverse employment action."). It is also

---

[2] Additionally, Deputy Warden Hooper, who assigned Plaintiff to Major Lessard's team, testified that he was not aware of Major Lessard's sexual orientation. Doc. 18-3, Hooper Dep. 24:2-11.

[3] The duties between Tower 8 and Tower 6 were relatively equal. *See* Doc. 18-3, Hooper Dep. 61:6-14; Doc. 15-7, Guerin Summ. J. Aff. The notable difference between the towers was that Tower 8 contained a computer monitor and a sally port. *See* Doc. 15-10, Lessard Summ. J. Aff.; Doc. 15-7, Guerin Summ. J. Aff. However, the computer monitor did not require Plaintiff to operate it and the sally port gates simply opened by pressing a button. *See* Doc. 15-10, Lessard Summ. J. Aff.

9

undisputed that Plaintiff later received the wages deducted by Major Lessard for leave that was not authorized at the time, but was later determined to be pursuant to the FMLA.[4] (Doc. 15-4, Paul Dep. 99:4-25).  Aside from demonstrating mild inconveniences, Plaintiff has not produced any evidence that these actions adversely affected her employment.

Similarly, the placement of Plaintiff with an officer who was known to sleep on the job and the embarrassment Plaintiff experienced by being the only officer to wear a new hat, are not material adversities.[5] Each of these incidents merely amounted to trivial, petty slights, or minor annoyances. *See Stewart*, 586 F.3d at 332 (concluding that being chastised by superiors and ostracized by co-workers does not rise to the level of material adversities). And since Title VII does not set forth "a general civility code for the American workplace," *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998), these incidents do not rise to the level of adverse employment actions.

### 3.   Causal Link

Under the causal link prong, the Court considers "(1) the employee's past disciplinary record, (2) whether the employer followed its typical policy and procedures in terminating the employee, and (3) the temporal proximity between the employee's conduct and termination." *Valderaz v. Lubbock Cty. Hosp. Dist.*, 611 F.

---

[4] Warden Guerin testified that shift supervisors, such as Major Lessard, were not notified by the Human Resources Office of an employee's FMLA leave.

[5] Working with the sleeping officer primarily burdened Plaintiff with the task of awaking him, *see* Doc. 18-6 at pp. 9-10, 11-12, and being the only officer to wear a new hat merely resulted in Plaintiff's embarrassment, *see* Doc. 15-4, Paul Dep. 73:10-74:6.

App'x 816, 823 (5th Cir. 2015) (quoting *DeHart*, 214 F. App'x at 442–43). Defendants, however, only focus on temporal proximity and contend that Plaintiff cannot demonstrate a causal link because over a year lapsed between the protected activity and the adverse employment action. (Doc. 15-1 at p. 15). While the Court agrees that over a year is not close enough to overcome the causal link prong, *Feist*, 730 F.3d at 454, temporal proximity "is not itself determinative of retaliation," *DeHart*, 214 F. App'x at 442 (citing *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 44 (5th Cir. 1992)).

Given the large temporal gap between the prior lawsuit and the termination, Plaintiff's past employment record and Hunt's typical policies and procedures are essential to determine the existence of a causal link. However, the parties do not address Plaintiff's past employment record, so the Court will only consider Hunt's typical policies and procedures.

Under Hunt's policies and procedures, employees are required to take a post-accident drug test when an accident "results in bodily injury or property damage." (Doc. 15-3 at p. 5). Moreover, the Hunt Employee Handbook states: (1) "[a]ll employees are subject to drug testing . . . [and] [f]ailure to comply with instructions/orders to submit to a drug test may result in termination from employment," (Doc. 15-12 at p. 31); (2) "[d]irect written or verbal orders must be obeyed cooperatively and promptly," (*id*. at 38); and (3) termination is a disciplinary penalty available for any rule infraction, (*id*. at 43).

In light of these policies, it is clear that after the Tower 8 gate hit the Hunt van, Major Lessard properly ordered Plaintiff to submit to a drug test pursuant to an established drug testing policy. It is also clear that her failure to comply with that

order subjected her to termination under the rules set forth in the Employee Handbook. Considering the lack of temporal proximity, in conjunction with Hunt's policies, the Court concludes that a dispute of material fact does not exist as to the causal link prong. Thus, Plaintiff is unable to meet her burden of establishing a prima facie case and summary judgment is appropriate.

C.    **State Law Claims**

In addition to Title VII, Plaintiff also brought a retaliation and sexual harassment claim under the LEDL. (Doc. 1). In bringing these claims, Plaintiff sought to invoke the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367.

A district court may decline to exercise supplemental jurisdiction if: "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c); *Pierce v. Hearne Indep. Sch. Dist.*, 600 F. App'x 194, 201 (5th Cir. 2015). Where all federal claims have been dismissed, as the Court has done here, there is "a powerful reason to choose not to continue to exercise jurisdiction." *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988). Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's pendent state law claims.

**IV.    CONCLUSION**

Based on the foregoing,

**IT IS ORDERED** that the **Motion for Summary Judgment (Doc. 15)**, filed by Defendants Elayn Hunt Correctional Center, the Department of Public Safety and Corrections, and the State of Louisiana is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's sexual harassment and retaliation claims, pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, against Elayn Hunt Correctional Center, the Department of Public Safety and Corrections, and the State of Louisiana, are **DISMISSED**. This Court declines jurisdiction over any pendent state law claims, and those claims are **DISMISSED WITHOUT PREJUDICE**.

Baton Rouge, Louisiana, this 29th day of April, 2016.

**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**