# *United States Court of Appeals*
### FIFTH CIRCUIT
### OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE**
**NEW ORLEANS, LA 70130**

December 12, 2016

Mr. Michael L. McConnell
Middle District of Louisiana, Baton Rouge
United States District Court
777 Florida Street
Room 139
Baton Rouge, LA 70801

      **No. 16-30574    Jennifer Paul v. Elayn Hunt Correctional
                   Center, et al**
                   USDC No. 3:14-CV-558

Dear Mr. McConnell,

Enclosed is a copy of the judgment issued as the mandate and a
copy of the court's opinion.

Enclosed for the district court and counsel is the approved bill
of costs.

                           Sincerely,

                           LYLE W. CAYCE, Clerk

                           *Sabrina B. Short*
                   By: _____
                   Sabrina B. Short, Deputy Clerk
                   504-310-7817

cc w/encl:
    Ms. Margaret A. Collier
    Mrs. Charlotte C. McDaniel McGehee

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

No. 16-30574
Summary Calendar

_____

D.C. Docket No. 3:14-CV-558

United States Court of Appeals
Fifth Circuit

**FILED**

November 18, 2016

Lyle W. Cayce
Clerk

JENNIFER D. PAUL,

      Plaintiff - Appellant

v.

ELAYN HUNT CORRECTIONAL CENTER; DEPARTMENT OF PUBLIC
SAFETY AND CORRECTIONS; STATE OF LOUISIANA,

      Defendants - Appellees

Appeal from the United States District Court for the
Middle District of Louisiana, Baton Rouge

Before KING, DENNIS, and COSTA, Circuit Judges.

## J U D G M E N T

This cause was considered on the record on appeal and the briefs on file.

It is ordered and adjudged that the judgment of the District Court is
affirmed.

IT IS FURTHER ORDERED that plaintiff-appellant pay to defendants-
appellees the costs on appeal to be taxed by the Clerk of this Court.



**Certified as a true copy and issued
as the mandate on Dec 12, 2016**

Attest:

*Lyle W. Cayce*

**Clerk, U.S. Court of Appeals, Fifth Circuit**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-30574
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

November 18, 2016

Lyle W. Cayce
Clerk

JENNIFER D. PAUL,

> Plaintiff - Appellant

v.

ELAYN HUNT CORRECTIONAL CENTER; DEPARTMENT OF PUBLIC
SAFETY AND CORRECTIONS; STATE OF LOUISIANA,

> Defendants - Appellees

---

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:14-CV-558

---

Before KING, DENNIS, and COSTA, Circuit Judges.

PER CURIAM:*

After she was terminated from her job as a correctional officer, Plaintiff–
Appellant Jennifer Paul filed suit under Title VII, alleging that the
termination was in retaliation by her employer, Defendant–Appellee Elayn

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 16-30574

Hunt Correctional Center, for an earlier sexual harassment suit.[1]  The district court granted summary judgment for her employer, concluding that Paul failed to make a prima facie case of retaliation.  Finding no error in the district court's grant of summary judgment, we AFFIRM.

## I. FACTS AND PROCEEDINGS

Plaintiff–Appellant Jennifer Paul was employed as a correctional officer at the Elayn Hunt Correctional Center (Hunt) in St. Gabriel, Louisiana.[2]  In 2009, Paul filed suit against Hunt, alleging that she was sexually harassed by other Hunt correctional officers, including other female officers.  The lawsuit was resolved via a confidential settlement and Paul was reinstated to her position in 2011.  Upon her return to Hunt, Paul was placed under a new supervisor, an openly gay female officer.   On the night of December 15, 2013, Paul was operating the gate at Tower 8, an entrance to a unit at Hunt, when the gate malfunctioned, causing it to strike a vehicle passing through it. Patrick Bailey, the Hunt employee who was driving the vehicle, contacted both Paul's supervisor and his own supervisor to inform them about the incident. Hunt's drug policy provides that employees may be drug tested "[f]ollowing an accident that occurs during the course and scope of an employee's employment that . . . results in . . . property damage."  Pursuant to this policy, Paul's supervisor instructed her to report for a drug test that night.[3]  Paul did not comply with this order; instead, she asked to speak to the next person in the

---

[1] Paul's complaint also included sexual harassment claims under Title VII and the Louisiana Employment Discrimination Law against her employer.  However, Paul's arguments on appeal relate only to her retaliation claim, and thus we consider any appeal on these sexual harassment claims abandoned for failure to adequately brief them.  *See Brinkman v. Dallas Cty. Deputy Sheriff Abner*, 813 F.2d 744, 748 (5th Cir. 1987).

[2] In recounting these facts we do so in the light most favorable to Paul and make all reasonable inferences in her favor.  *See Spong v. Fid. Nat. Prop. & Cas. Ins. Co.*, 787 F.3d 296, 299 (5th Cir. 2015).

[3] Bailey was also instructed to submit to a drug test that night and complied with this order.

No. 16-30574

chain of command because she did not "trust" her supervisor. In response, Paul's supervisor called the warden on duty and advised him of the situation. The warden instructed that Paul be sent home for the night and return in the morning. Paul's supervisor accordingly told Paul to go home and Paul complied. On January 2, 2014, Paul was issued a Violation Report (VR-1) for her failure to follow her supervisor's order to submit to a drug test.[4] The VR-1 recommended "dismissal" as the disciplinary action and the reason for this recommendation was "willingness of rule violation." Paul was ultimately terminated from her job at Hunt.

On September 5, 2014, after receiving a right to sue letter from the Equal Employment Opportunity Commission, Paul filed suit against Defendants–Appellees Hunt, the Louisiana Department of Public Safety and Corrections, and the State of Louisiana (collectively, Defendants), alleging that she was retaliated against in return for her earlier sexual harassment suit, in violation of Title VII. The Defendants moved for summary judgment, which the district court granted because it found that Paul had failed to establish a prima facie case of retaliation. Specifically, the district court concluded that Paul had not demonstrated a genuine dispute of material fact regarding whether her termination was caused by her sexual harassment suit. Paul timely appealed.

## II. STANDARD OF REVIEW

We review a grant of summary judgment de novo, applying the same standard as the district court. *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine

---

[4] The Hunt Employee Manual provides that after an employee violates a rule, the employee's supervisor may issue a VR-1. The employee may then appeal the VR-1 through two levels of internal review before final disciplinary action is taken.

No. 16-30574

dispute as to a material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Rogers*, 755 F.3d at 350 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).   In determining whether the movant is entitled to summary judgment, we view all evidence in the light most favorable to the non-movant, draw all reasonable inferences in her favor, and decline to make credibility determinations or weigh the evidence. *Ion v. Chevron, USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013).

### III. PRIMA FACIE CASE OF TITLE VII RETALIATION

Paul argues that the district court erred in granting summary judgment on her Title VII retaliation claim.   Title VII prohibits an employer from discriminating against an employee because she "'made a charge . . . in' a Title VII 'investigation, proceeding, or hearing.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006) (quoting 42 U.S.C. § 2000–3(a)).   We analyze Title VII retaliation claims that are based on circumstantial evidence under the *McDonnell Douglas* burden-shifting framework.   *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973) (establishing burden-shifting framework). Under this framework, Paul must first prove a prima facie case of retaliation by showing that (1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) there is a causal link between the protected activity and the adverse action. *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996).   If Paul satisfies her burden of proving a prima facie case of retaliation, the burden then shifts to Hunt to demonstrate "a legitimate non-retaliatory purpose" for the adverse action.   *Id.* at 305.   If Hunt so demonstrates, the burden shifts back to Paul to "demonstrate a material issue of disputed fact as to whether [Hunt's] proffered explanation was merely a pretext for retaliation." *Gee v. Principi*, 289 F.3d 342, 347 (5th Cir. 2002).   "In

4

Case: 16-30574    Document: 00513792107    Page: 5    Date Filed: 12/12/2016
Case 3:14-cv-00558-BAJ-RLB    Document 32    12/12/16    Page 7 of 13

No. 16-30574

order to avoid summary judgment, [Paul] must show 'a conflict in substantial evidence' on the question of whether [Hunt] would not have taken the action 'but for' the protected activity." *Feist v. La., Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (quoting *Long*, 88 F.3d at 308); *see also Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013) ("[A] plaintiff must establish that . . . her protected activity was a but-for cause of the alleged adverse action by the employer.").

**A. Protected Activity**

Paul clearly satisfies the first prong of her prima facie case; her 2009 Title VII suit for sexual harassment constitutes a protected activity. *See* 42 U.S.C. § 2000–3(a) (making it a protected activity to "ma[k]e a charge . . . in an investigation, proceeding, or hearing" under Title VII).

**B. Adverse Employment Action**

Paul's termination clearly constitutes an adverse employment action. *See Wheat v. Fl. Par. Juvenile Justice Comm'n*, 811 F.3d 702, 710 (5th Cir. 2016). However Paul appears to argue that the district court erred in failing to recognize additional adverse actions Hunt took against her. Specifically, Paul notes the following incidents: (1) placing her under the supervision of an openly gay female when she had previously been harassed by another female coworker; (2) assigning her to work with an officer who fell asleep on the job; (3) instructing her to wear the incorrect uniform; (4) denying her vacation leave; (5) docking her pay; and (6) reassigning her to work at a new tower. The district court concluded that none of these incidents rose to the level of an adverse employment decision, and we agree.

In order to constitute an adverse employment action for the purposes of a prima facie case of retaliation, there must be a "materially adverse" action that is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Porter v. Houma*

No. 16-30574

*Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 945 (5th Cir. 2015) (quoting *White*, 548 U.S. at 57). This requirement of materiality is intended to "separate significant from trivial harms." *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008) (quoting *White*, 548 U.S. at 68). Accordingly, this standard does not encompass the "'petty slights, minor annoyances, and simple lack of good manners' that employees regularly encounter in the workplace." *Id.* at 485 (quoting *White*, 548 U.S. at 68). To determine whether an action is materially adverse, we look to indicia such as whether the action affected "job title, grade, hours, salary, or benefits" or caused "a diminution in prestige or change in standing among . . . co-workers." *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009).

Under this standard, incidents (1)–(3) above are not "materially adverse." *Porter*, 810 F.3d at 945 (quoting *White*, 548 U.S. at 68). These incidents did not affect Paul's "job title, grade, hours, salary, or benefits"—they instead left her "duties . . . unchanged"—and they did not cause her to "suffer[] a diminution in prestige or change in standing among her co-workers." *Stewart*, 586 F.3d at 332. At best, these incidents "fall into the category of 'petty slights, minor annoyances, and simple lack of good manners' . . . which the Supreme Court has recognized are not actionable retaliatory conduct." *Aryain*, 534 F.3d at 485 (quoting *White*, 548 U.S. at 68); *see also Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (noting that Title VII does not set forth a "general civility code for the American workplace"). We now address the remaining three incidents in turn.

First, Paul alleges that her supervisor caused the warden to deny Paul's request to take vacation leave. The warden's cited reason for this denial was that Paul had previously abused taking leave and had too many absences. Paul acknowledges that, since she had exhausted her leave for the year, it was within the warden's discretion to deny her additional leave. There is no

No. 16-30574

indication in the record that Hunt had a pattern of denying leave to Paul or that Paul would not be able to take leave once her leave replenished at the turn of the new year. Given these undisputed facts, the denial of Paul's leave was not materially adverse. *See Ogden v. Potter*, 397 F. App'x 938, 939 (5th Cir. 2010) (per curiam) ("A single denial of leave is not an adverse employment action when it affects leave on a specific date and time, but not the employee's amount of or right to take leave in general, because a reasonable employee would not have found the action to be materially adverse.").

Next, Paul alleges that her supervisor caused two days' pay to be docked from her paycheck based on the mistaken belief that Paul took unauthorized leave time on those days. However, Paul admits that she later received this pay back once her leave was determined to be authorized. This temporary delay in receiving two days' worth of pay, based on one supervisor's mistaken belief that leave for missed days was unauthorized, does not rise to the level of a "materially adverse" employment action by Hunt. *Porter*, 810 F.3d at 945 (quoting *White*, 548 U.S. at 57); *cf. Benningfield v. City of Hous.*, 157 F.3d 369, 378 (5th Cir. 1998) (finding that a two-year delay in promotion was not an adverse employment action because the plaintiff ultimately received the promotion with retroactive pay and seniority); *Anthony v. Donohoe*, 460 F. App'x 399, 404 (5th Cir. 2012) (per curiam) (emphasizing temporary nature of an incident in concluding that it didn't rise to the level of an adverse employment action).

Finally, Paul alleges that she was retaliated against by being reassigned from Tower 6 to Tower 8. She notes that Tower 8, unlike Tower 6, has a gate that she was required to operate but on which she was not trained. She claims that, by virtue of the gate, Tower 8 is "a harder position" and "a more detailed job assignment," making it "a worse tower" than Tower 6. Paul does not allege that this reassignment affected her pay, benefits, or relative prestige. Instead,

7

No. 16-30574

she argues only that her new assignment entailed the additional task of operating a gate, and the record indicates that this task only required turning a switch. But a reassignment that requires additional tasks is not materially adverse if it is not accompanied by any other change in the employee's status. *See Watts v. Kroger Co.*, 170 F.3d 505, 512 (5th Cir. 1999). And a merely "[u]desirable work assignment" does not result in material adversity to the assigned employee. *Southard v. Tex. Bd. of Criminal Justice*, 114 F.3d 539, 555 (5th Cir. 1997). Rather, as we have repeatedly held, a "purely lateral transfer" is not an adverse employment action. *Outley v. Luke & Assocs., Inc.*, --- F.3d ---, 2016 WL 6124115, at *2 (5th Cir. Oct. 19, 2016) (quoting *Burger v. Cent. Apartment Mgmt., Inc.*, 168 F.3d 875, 879 (5th Cir. 1999)); *see also Wheat*, 811 F.3d at 709; *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 331 (5th Cir. 2004).

## C. Causal Link

Having concluded that the only adverse employment action that Paul suffered was her termination, we now consider whether Paul has shown a causal link between her termination and her earlier sexual harassment suit. To satisfy this "causal link" requirement, Paul must provide substantial evidence that "but for" her sexual harassment suit, she would not have been terminated. *See Wheat*, 811 F.3d at 705 (citing *Nassar*, 133 S. Ct. at 2533). "Close timing between an employee's protected activity and an adverse action against [her] may provide the 'causal connection' required to make out a prima facie case of retaliation." *Heggemeier v. Caldwell Cty.*, 826 F.3d 861, 870 (5th Cir. 2016) (per curiam) (alteration omitted) (quoting *Swanson v. Gen Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997) (emphasis omitted)). "But the Supreme Court has emphasized that the [temporal] proximity must be 'very close'" to show such a causal connection. *Id.* (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). Here, there was a significant time lapse

8

No. 16-30574

between Paul's protected conduct—her 2009 sexual harassment suit—and her termination in January 2014. Even taking the date of the dismissal of the prior sexual harassment suit, July 18, 2011, as the date of the protected conduct, under our precedent this time lapse of nearly 30 months is too great to show a causal link between the two events. *See Heggemeier*, 826 F.3d at 869–70 (concluding that passage of 21 months was "too substantial a gap to support an inference of causation"); *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 479 (5th Cir. 2015) (temporal gap of 8–10 months too substantial).

Even absent temporal proximity, a plaintiff may still show a causal connection if there is "other evidence of retaliation." *Feist*, 730 F.3d at 454. "Such evidence may include an employment record that does not support [the employer's action], or an employer's departure from typical policies and procedures." *Id.* at 454–55. However Paul does not show that her employment record did not support her termination. In fact, in her opposition to Hunt's motion for summary judgment, she entirely failed to discuss her employment record.[5] And Paul does not point to any deviation from Hunt's typical policies and procedures. Rather, the undisputed evidence shows that the gate struck the van while Paul was operating the gate and that Hunt policy requires employees involved in an accident "that results in . . . property damage" to take a drug test. Further, the undisputed evidence also shows that Paul was ordered to take a drug test but did not follow this order,[6] in contravention of

---

[5] Paul argues on appeal that there was evidence in the record regarding her employment record. But she did not discuss this evidence in her response to Hunt's summary judgment motion. Accordingly, this evidence was not properly before the district court on summary judgment and it was not error for the district court to not consider it. *See Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court.").

[6] On appeal Paul makes much of the fact that she did comply with her supervisor's later instruction to go home and return the next day, but this obedience does not negate the fact that Paul admits that her supervisor instructed her to submit to a drug test and she did

No. 16-30574

Hunt's Employee Manual, which provides that "[d]irect written or verbal orders must be obeyed cooperatively and promptly" and also advises that "[f]ailure to comply with instructions/orders to submit to a drug test may result in termination." Paul acknowledged receipt of this Employee Manual and does not dispute its content on appeal. Nor does Paul allege that this policy was selectively applied to her; rather, the record indicates that the other employee involved in the gate malfunction was also required to immediately submit to a drug test. Therefore we conclude that Paul's sexual harassment suit was not the but-for cause of her termination; rather, her failure to submit to the drug test and to follow her supervisor's order provided an independent and legitimate basis for her termination.[7] Paul failed to establish a prima facie case of retaliation and the district court accordingly did not err in granting summary judgment for Hunt.

## IV. CONCLUSION

For the foregoing reasons we AFFIRM the district court's judgment.

---

not comply. Indeed, Paul's supervisor only gave this latter instruction because Paul failed to comply with the earlier command. Paul also relies on her Tower 8 post order as justification for failing to submit to a drug test. A post order advises an employee of the specific duties and responsibilities that are associated with a specific assignment area. Paul argues that because there was no mention of drug screening in her Tower 8 post order, she was justified in seeking clarification up the chain of command before taking a drug test. Yet Paul's Tower 8 post order did instruct her to follow the Hunt Employee Manual, as well as all Hunt regulations and policies. It also provided that while posted at Tower 8, an employee should follow all orders issued by their supervisor. Given this, we disagree that Paul's post order provided her a basis for refusing to submit to the drug test when ordered to do so.

[7] Paul also appears to argue that the delay between the incident on December 15 and the issuance of the VR-1 on January 2 can be used to infer a retaliatory purpose. But she cites no support for the assertion that a delay of just over two weeks—spanning the Christmas and New Year holidays—can be the basis for inferring a retaliatory purpose. And by Paul's own account, a warden told her verbally on the day following the accident that she would be terminated, thus this decision was merely formalized on January 2.

Print Form

UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

## BILL OF COSTS

**NOTE: The Bill of Costs is due in this office *within 14 days from the date of the opinion, See* FED. R. APP. P. & 5ᵀᴴ CIR. R. 39. Untimely bills of costs must be accompanied by a separate motion to file out of time, which the court may deny.**

Jennifer Paul _____ **v.** Elayn Hunt Correctional Center; Department of Public Sa **No.** 16-30574

The Clerk is requested to tax the following costs against: Jennifer Paul

| COSTS TAXABLE UNDER Fed. R. App. P. & 5ᵗʰ Cir. R. 39 | REQUESTED | | | | ALLOWED (If different from amount requested) | | | |
|---|---|---|---|---|---|---|---|---|
| | No. of Copies | Pages Per Copy | Cost per Page* | Total Cost | No. of Documents | Pages per Document | Cost per Page* | Total Cost |
| **Docket Fee ($450.00)** | | | | | | | | |
| **Appendix or Record Excerpts** | 5 | 37 | 0.15 | 27.75 | 5 | 37 | .15 | 27.75 |
| **Appellant's Brief** | | | | | | | | |
| **Appellee's Brief** | 8 | 37 | 0.15 | 44.4 | 8 | 37 | .15 | 44.40 |
| **Appellant's Reply Brief** | | | | | | | | |
| **Other:** | | | | | | | | |

Total $ 72.15

Costs are taxed in the amount of $ 72.15

Costs are hereby taxed in the amount of $ 72.15 _____ this _____ 12th _____ day of _____ December _____, 2016 .

State of _____

County of _____

LYLE W. CAYCE, CLERK

By _____

Deputy Clerk

I Margaret A. Collier _____, do hereby swear under penalty of perjury that the services for which fees have been charged were incurred in this action and that the services for which fees have been charged were actually and necessarily performed. A copy of this Bill of Costs was this day mailed to opposing counsel, with postage fully prepaid thereon. This 30th _____ day of November _____, 2016 _____.

_____
(Signature)

*SEE REVERSE SIDE FOR RULES
GOVERNING TAXATION OF COSTS

Attorney for Defendants-Appellees